400 A.2d 1284

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles FISHER, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 11, 1979.

Decided May 1, 1979.

David R. Eshelman, Asst. Public Defender, Reading, for appellant.

Charles M. Guthrie, Jr., Asst. Dist. Atty., Reading, for appellee.

Before EAGEN, C. J., and ROBERTS, MANDERINO and LARSEN, JJ.

OPINION OF THE COURT

EAGEN, Chief Justice.

Appellant, Charles Fisher (Fisher), was convicted by a jury in Berks County for possession of a prohibited offensive

weapon.[1] Post trial motions were denied, and the court imposed a prison sentence of one to three years to run consecutively with sentences he had received for other unrelated offenses. Fisher then, with new counsel, appealed to the Superior Court which affirmed the judgment of sentence.[2] We granted Fisher's petition for allowance of appeal.

The trial record establishes the following:

Two police officers patrolling downtown Reading in separate vehicles observed Fisher and two companions walking down the street at about 3:30 a. m. Officer Paul Brown approached the three men and asked for their identification. When the three replied they had none, the officer asked their names and addresses. During this questioning, Fisher walked to the far side of Officer Brown's vehicle and bent down. The second police officer, Sergeant Arndt, who arrived during the questioning of the men, observed Fisher take an object from his pocket and bend over next to Officer Brown's car, and he heard a click as Fisher appeared to throw some object under the car. The men were put into a police wagon to be taken to police headquarters for further identification. The object Sergeant Arndt retrieved from beneath his vehicle consisted of a metal handle, with two finger holes, which incorporates two cutting blades, one facing outward,[3] the other inward.

Fisher maintains the object which he allegedly possessed, a "Wyoming Knife," is not a prohibited offensive weapon according to the terms of Section 908 of the Crimes Code.[4]

1. 18 Pa.C.S.A. § 908 (1973).

2. Judge Spaeth concurred in the result, and Judge Hoffman filed an opinion concurring in part and dissenting in part.

3. The outward blade was sheathed when the officer retrieved the implement.

4. Section 908(c) defines "offensive weapon" as any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button,

At trial, he introduced into evidence an advertisement from a sporting goods magazine which depicts an implement called a "Wyoming Knife" and describes it as an "all purpose cutting tool for skinning wild game—ideal for cleaning all game and fish." The knife is displayed as part of an array of hunting knives. The object allegedly possessed by Fisher bears the marking "WK" and is apparently identical to the advertised implement. Thus, Fisher reasons, because a Wyoming Knife is not enumerated in the definition of an offensive weapon and because he established the knife has a common lawful purpose, it cannot be considered an offensive weapon prohibited by Section 908.

Fisher is correct in his assertion that a Wyoming Knife is not among the items specifically enumerated in Section 908(c). While cutting instruments are specially listed, along with daggers, knives and razors, the portion of Section 908(c) which enumerates these objects with blades is limited by the phrase "the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise." See *Commonwealth v. Cartagena*, 482 Pa. 6, 28, 393 A.2d 350, 361 (1978) (plurality opinion). Any other reading of this phrase of the statute would render possession of almost any instrument with a blade a punishable offense, no matter how commonplace the object. Our purpose in interpreting statutes is to ascertain and effectuate the intention of the legislature,[5] and we may presume the legislature did not intend a result that is absurd or unreasonable.[6] We conclude a Wyoming Knife is not among the objects specifically enumerated by Section 908(c) because, although it is a cutting instrument, its blades are not exposed in an automatic way by switch, push-button, spring mechanism, or otherwise.

spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

5.   1 Pa.C.S.A. § 1921(a) (Supp.1978).

6.   1 Pa.C.S.A. § 1922(1) (Supp.1978).

Fisher's contention that a Wyoming Knife also does not constitute an implement for the infliction of serious bodily injury which serves no common lawful purpose presents a more difficult question. In resolving this issue, the Superior Court relied upon the reasoning of *Commonwealth v. Gatto*, 236 Pa.Super. 92, 344 A.2d 566 (1975). In *Gatto*, the Superior Court held a knife with a thirty-inch blade was an implement for the infliction of serious bodily injury which served no common lawful purpose, and possession of it was therefore punishable under Section 908. The court reasoned that every knife, as well as every enumerated offensive weapon, has some conceivable lawful purpose, but that a knife with a thirty-inch blade had no common lawful purpose under the circumstances, viz. possession in the downtown area of a large city in the middle of the night. In order to reach a "reasonable" construction, the court interpreted the words "no common lawful purpose" to read "no common lawful purpose *under the circumstances.*"

A phrase necessary to the construction of a statute may be added if it does not conflict with the obvious purpose and intent of the statute, nor in any way affects its scope.[7] Therefore, guided by the principle that penal provisions must be strictly construed,[8] we must look to the purpose, intent and scope of Section 908 to determine whether reading in the phrase "under the circumstances" is a permissible construction.

Sections 907 and 908 of the Crimes Code are derived from Sections 5.06 and 5.07, respectively, of the Model Penal Code.[9] Although the Crimes Code provisions are not identical to the Model Penal Code provisions from which they are derived, the provisions are similar in most respects. The

7. 1 Pa.C.S.A. § 1923(c) (Supp.1978).

8. 1 Pa.C.S.A. § 1928(b)(1) (Supp.1978).

9. American Law Institute, Model Penal Code, Reprint of Proposed Official Draft (1962).

joint comment to Sections 5.06 and 5.07 [10] notes that certain weapons, for example bombs, machine guns and blackjacks, are prohibited absolutely, or with very narrow grounds for justification, by Section 5.07 because they are regarded as having substantially no lawful uses. These weapons are distinguished from weapons proscribed by Section 5.06 as follows:

"Other weapons like sporting rifles, shotguns and revolvers, and dangerous implements which have peaceful as well as lethal potentialities, like knives and straight razors, cannot be dealt with by drastic prohibition. Not only must we take account of the desires of sportsmen, farmers, and dealers in hunting equipment, we must also recognize that revolvers and knives are frequently carried for defensive purposes. Many knives too are carried for purposes unrelated to the infliction of bodily harm, whether defensive or aggressive."[11]

In the case of weapons and objects possessing peaceful as well as lethal potentialities, i. e., those covered by Section 5.06, the Reporters and Advisory Committee favored a requirement of proof of criminal purpose if the object possessed is a weapon within the meaning of Section 5.06.[12] At least one of the concerns reflected in this treatment of weapons with dual potentialities is the problem of discriminatory enforcement. In contrast, the "drastic prohibition" contained in Section 5.07 required no proof of criminal purpose.

A comparison of Sections 907 and 908 of the Crimes Code serves to clarify the proper scope of Section 908. Section 907 requires the Commonwealth to prove a person who

10. American Law Institute, Model Penal Code, Reprint of Tentative Drafts Nos. 11–13 (1960).

11. *Id.*, at 68.

12. Although it was not adopted, a proposed subsection of Section 5.06 which would have penalized possession of concealed revolvers and pistols without proof of criminal purpose was favored by a substantial majority of the Council.

possessed a weapon or criminal instrument had intent to employ it criminally. Section 908 does not impose this requirement. This is attributable to the divergent purposes of the two provisions. The items proscribed by Section 908, bombs and grenades for example, generally have no common lawful purpose; possession of these implements is prohibited in all but the most limited circumstances, i. e., when authorized by law. Since the items comprehended by Section 907 have both lawful and unlawful uses, proof of criminal intent is required.

A comparison of the definitions set forth in Sections 907 and 908 provides further assistance. Section 907(c) reads:

"(c) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

'Instrument of Crime.'

(1) Anything specially made or specially adapted for criminal use; or

(2) anything commonly used for criminal purposes and *possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.* 'Weapon.' Anything readily capable of lethal use and *possessed under circumstances not manifestly appropriate for lawful uses which it may have.* . . ." [Emphasis supplied.]

In contrast, Section 908(c), in defining "offensive weapon," makes no reference to the circumstances in which possession occurs. Offensive weapons are defined, inter alia, as having *no common lawful purpose.* In light of the failure of the legislature to include these words in the Section 908(c) definition of offensive weapon and the purposes and scheme of both Sections 907 and 908 of the Crimes Code and Sections 5.06 and 5.07 of the Model Penal Code from which they derive, we cannot agree the words "under the circumstances" may be added as a matter of statutory construction. To do so increases the scope of Section 908 of the Crimes

Code beyond what was intended by the legislature and causes an unnecessary and unintended overlap with Section 907.

Moreover, failure to construe the statute in that manner does not result in an unreasonable construction. Words and phrases are to be construed according to their approved and common usage.[13] While some conceivable lawful use could be found for almost every object otherwise proscribed by Section 908, the statute does not prohibit only items with no *conceivable* lawful purpose, but, more broadly, items with no *common* lawful purpose. We hold only that a hunting implement which has common lawful purpose is not within the scope of the prohibition of Section 908 of the Crimes Code.[14]

The order of the Superior Court is reversed and appellant is ordered discharged.

O'BRIEN and NIX, JJ., did not participate in the consideration or decision of this case.

LARSEN, J., joins in this opinion and filed a concurring statement.

LARSEN, Justice, concurring.

I join in the majority opinion; the appellant should have been prosecuted under Section 907 of the Crimes Code instead of Section 908.

13.  1 Pa.C.S.A. § 1903(a) (Supp.1978).

14.  Appellant raises other arguments regarding: (1) effectiveness of trial counsel and (2) abuse of discretion by the trial court in imposing sentence. In view of our disposition, we need not address the merits of these claims.