549 A.2d 943

**COMMONWEALTH of Pennsylvania**

v.

**Arnold HITCHON, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1988.

Filed Sept. 22, 1988.

Reargument Denied Nov. 22, 1988.

138

Stanley M. Shingles, Philadelphia, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Com., appellee.

Before BECK, KELLY and JOHNSON, JJ.

KELLY, Judge:

Appellant, Arnold Hitchon, appeals the judgment of sentence entered on July 23, 1987. We affirm.

On October 1, 1986, appellant was convicted of possession of a prohibited offensive weapon. Timely post-verdict motions were filed, argued, and denied. Thereafter, on July 23, 1987, appellant was sentenced to a term of six months probation. This timely appeal followed.[1]

On appeal, appellant contends that: (1) the evidence is insufficient to support the verdict; (2) Section 908 of the Penal Code is unconstitutionally vague and impermissibly shifts the burden of proof to defendant; (3) the submission to the jury of the issue of whether the object in question is a dagger, knife, razor or cutting instrument, constituted prejudicial error; and (4) a written advertisement relating to the implement was erroneously admitted into evidence.

1. Appellant was originally tried and convicted in September of 1984. By order dated June 19, 1986, the trial court reversed the conviction and granted appellant a new trial on the basis that a court exhibit containing appellant's prior record inadvertently went out with the jury when it commenced deliberations.

## FACTUAL HISTORY

While on patrol at approximately 12:10 p.m. on December 9, 1983, Captain Ronald Traenkle of the Bensalem Township Police Department observed a brown Oldsmobile parked illegally in front of a True Value hardware store. (N.T. 9/29/86 at 18). The vehicle was unoccupied with the motor running. (N.T. 9/29/86 at 18). Captain Traenkle parked his police car and observed the Oldsmobile and the hardware store for approximately five minutes. (N.T. 9/29/86 at 18). The officer then approached the Oldsmobile, copied down the registration number and radioed headquarters for a registration check. (N.T. 9/29/86 at 19). After receiving the information requested, Captain Traenkle entered the hardware store and twice called out in a loud voice "[w]ho is the owner of the vehicle parked in front of the doorway, the brown Oldsmobile?" (N.T. 9/29/86 at 20–22). Upon receiving no response, the officer commented to the store manager that he would have the vehicle towed away and began to exit the store. (N.T. 9/29/86 at 22). Before Captain Traenkle got out of the door, however, he was approached by appellant, who asked, "Which vehicle do you mean?" (N.T. 9/29/86 at 22). When Captain Traenkle pointed to the brown Oldsmobile, appellant admitted that it was his car. (N.T. 9/29/86 at 22). Captain Traenkle told appellant to meet him outside after he completed his purchase.

While appellant and Captain Traenkle were outside by the vehicle, Captain Kenneth Hopkins and Officers Holdren and Campellone arrived on the scene. (N.T. 9/29/86 at 25). After receiving appellant's consent to search the Oldsmobile, Captain Hopkins opened up the trunk of the car and leaned over to look inside. (N.T. 9/29/86 at 26–27). As Captain Hopkins did that, appellant walked towards the trunk, and as he did so, he passed in front of Captain Traenkle. (N.T. 9/29/86 at 27). As appellant walked passed him, Captain Traenkle observed the upper third of an item which he recognized to be a "Guard Father" protruding from appellant's right rear pants pocket. (N.T. 9/29/86 at 22–29). After removing the object from his

pocket, Captain Traenkle placed appellant under arrest for possession of a prohibited offensive weapon.

At the police station, appellant was allowed to make a telephone call. (N.T. 9/29/86 at 61). Approximately ten to fifteen minutes later, a woman arrived at the station and handed appellant an advertisement. Upon receiving the advertisement, appellant said, "That's it." (N.T. 9/29/86 at 65–66). Appellant then gave the advertisement to Captain Traenkle who then made a copy of the advertisement and returned the original to the woman. (N.T. 9/29/86 at 66). The advertisement depicted an implement identical to the object seized from appellant. The object was identified as a "Guard Father," and described as a pen like instrument which, when its pocket-clip is depressed, a six inch long pointed steel shaft automatically ejects. According to the advertisement, the instrument was designed to be used as a "defensive" weapon. (Commonwealth Exhibits C–1, C–2).

## I.

■ Appellant's first contention is that the evidence was insufficient to support the verdict. Upon review of the record and the applicable authority, we find this claim is without merit.

In evaluating the sufficiency of the evidence, we must view all of the evidence, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, as the verdict winner, in order to determine if the evidence was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984); *Commonwealth v. Pearsall*, 368 Pa.Super. 327, 534 A.2d 106 (1987); *Commonwealth v. Hanes*, 361 Pa.Super. 357, 522 A.2d 622 (1987); *Commonwealth v. Reddix*, 355 Pa.Super. 514, 513 A.2d 1041 (1986). Moreover, where the evidence is conflicting, it is the province of the fact finder to determine credibility; it is the prerogative of the fact finder to believe all, part, or none of the evidence presented. *Commonwealth v. Pearsall, supra; Commonwealth v. Hanes, supra.*

Section 908(a) of the Pennsylvania Crime Code states: "[a] person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapons." 18 Pa.C.S.A. § 908(a). Section 908(c) defines an "offensive weapon" as "any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, *dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose.*" 18 Pa.C.S.A. § 908(c). (Emphasis added). Thus, a jury could properly find appellant guilty of possessing a prohibited offensive weapon if they found either (1) that the object in question is a cutting instrument, the blade of which is exposed in an automatic way or (2) that it was an implement for the infliction of serious bodily injury, which serves no common lawful purpose.

## A.

The object seized from appellant is a metal instrument shaped like a pen. When the clip is pressed a six-inch steel pointed shaft is ejected and locked into place. The only way the steel shaft can be put back into its casing is by placing the steel tip against a very hard surface and pushing it back into the casing and resetting the spring mechanism. It is clear therefore that the steel shaft is exposed automatically. The question is whether a six-inch steel shaft constitutes a "cutting instrument" as that term is used in the statute.

It is appellant's position that the *per se* section cannot apply because the guard father is not a "cutting instrument." Specifically, he contends that a cutting instrument must in fact have a blade and defines that term as the broad, flat sharp-edged part of a tool, instrument or weapon, the cutting part of a tool. Thus, appellant concludes

that the six-inch steel pointed shaft is not a "cutting instru-ment." (Appellant's Brief at 11). We disagree.

"Our purpose in interpreting statutes is to ascertain and effectuate the intention of the legislature, and we may presume the legislature did not intend a result that is absurd or unreasonable." *Commonwealth v. Fisher*, 485 Pa. 8, 16, 400 A.2d 1284, 1287 (1979); *see also* 1 Pa.C.S.A. §§ 1921(a), 1922(1).

Section 908 was "intended to establish a prohibition very nearly absolute aimed at the implements or weapons them-selves, whether enumerated or falling within the general definition which are offensive by nature." *Commonwealth v. Stewart*, 343 Pa.Super. 514, 533, 495 A.2d 584, 594 (1985) *citing Commonwealth v. Adams*, 245 Pa.Super. 431, 435, 369 A.2d 479, 481–82 (1976) (footnote omitted).

As interpreted by appellant, the term "cutting instru-ment" following "dagger, knife and razor" is superfluous as any weapon with a flat edged blade which is exposed in an automatic way would also be characterized as a dagger, knife or razor. Moreover, to conclude that the legislature intended to distinguish between edged and non-edged weap-ons both of which have lethal capabilities, both of which are designed for and useful for concealment and quick transfor-mation is absurd and unreasonable. As aptly summarized by the trial court, "appellant's reasoning implies that the legislature meant only to prohibit those weapons which *slice* while allowing weapons which *stab, tear* and *gouge.*" (Trial Ct.Op. at 5). (Emphasis added). In light of the purpose of Section 908, we do not believe the legislature intended such an absurd result, therefore, we find that the evidence was sufficient to support a verdict that a six-inch cylindrical steel shaft with a pointed end was a "cutting instrument." Hence, a guard father is an offensive weapon under the first definition in the statute.

### B.

Appellant also contends that the second alternative, *i.e.* the "other implement" clause, is equally inapplicable,

because although the guard father is capable of inflicting serious bodily injury, it serves a common lawful purpose. Appellant maintains that he uses the guard father as a center punch[2] and a metal scriber.[3] Moreover, appellant argues that the Commonwealth failed to produce competent evidence to establish that the instant object did not have a common lawful purpose. Finally, appellant contends that his conviction was improper because the circumstances surrounding the possession of the object negated any intent or likelihood that it would be used unlawfully. Again, we cannot agree.[4]

"While some conceivable lawful use could be found for almost every object otherwise proscribed by Section 908, the statute does not prohibit only items with no *conceivable* lawful purpose, but, more broadly, items with no *common* lawful purpose." *Commonwealth v. Fisher, supra,* 485 Pa. at 16, 400 A.2d 1288. (Emphasis in original). Furthermore, our Supreme Court, in *Commonwealth v. Fisher, supra,* held that on a charge of violating Section 908(c), a circumstance-of-the-possession test was inappropriate in determining whether the instrument served a common lawful

2. A center punch is defined as a "hand punch consisting of a short steel bar with a hardened conical point at one end used for marking the centers of holes to be drilled." Webster's Ninth New Collegiate Dictionary 221 (1986).

3. A scriber is defined as a "sharp-pointed tool for making marks and especially for marking of material (as wood or metal) to be cut." Webster's Ninth New Collegiate Dictionary 1055 (1986).

4. While the evidence is sufficient to sustain a verdict of guilty under the first theory, we cannot ascertain from the jury's verdict whether they found appellant guilty under both theories or only one of the two. Had we concluded that the evidence was insufficient to sustain the verdict on either theory, we would have been compelled to vacate and remand for a new trial. *Cf. Sandstrom v. Montana,* 442 U.S. 510, 61 L.Ed 39, 99 S.Ct. 2450 (1979) (when a case has been submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside); *U.S. v. Stanley,* 597 F.2d 866 (4th Cir.1979) (where defendant was convicted on one count of an indictment that charged him with possession of both a pistol and a shotgun and the court reversed the defendant's conviction for possession of the shotgun, the conviction in whole was reversed because it could not be determined from the general verdict of guilty whether the defendant had been convicted of possessing the pistol or the shotgun or both).

purpose. 485 Pa. at 16, 400 A.2d at 1288. *See also Commonwealth v. Artis*, 275 Pa.Super. 127, 418 A.2d 644 (1980); *Commonwealth v. Ashford*, 263 Pa.Super. 100, 397 A.2d 420 (1979) (plurality). The question therefore is not whether appellant has proffered a plausible lawful use for the object, or whether the circumstances of the possession negated an intent to use the instrument unlawfully, but whether the guard father has common lawful purpose within the community.

At trial, appellant testified on his own behalf. He stated that he used this particular instrument in his capacity as a machinist. He testified further that he used the implement as a center punch and as a metal scriber. (N.T. 9/30/86 at 168). To support his theory, appellant called as his expert James G. Longo, a precision toolmaker. Mr. Longo testified that he owned an identical object and that he used it as a metal scribe and center punch. (N.T. 9/30/86 at 106). Mr. Longo also outlined the practicality and utility of using this particular object as a metal scribe and as a center punch. (N.T. 9/30/86 at 104–05).

As its rebuttal witness, the Commonwealth called Trooper Leon E. Krebs, who had been employed by the Pennsylvania State police department as a firearm and toolmark examiner.[5] Trooper Krebs testified that he had extensive experience with metal scribes and center punches. (N.T. 9/30/86 at 192). Trooper Krebs stated that he has used a metal scribe almost daily in his work with the police department. He also used one when he was a United States Navy mechanic, when he worked as a machine operator, and as a hobbyist. (N.T. 9/30/86 at 192). Trooper Krebs further testified that he had never seen a spring loaded scribe and he had never seen a scribe with as much play as the guard father had. (N.T. 9/30/86 at 198–99). Additionally, he testified that he had never seen a center punch with a

---

5. As described by Trooper Krebs: "A tool mark analysis is conducted when a tool, regardless of the type of tool, is used to alter an object by prying, by cutting, by impressing its own mark upon an object, I am asked to attempt to duplicate and identify that tool as the tool which made the mark in question." (N.T. 9/30/86 at 194).

six-inch shaft and he had never seen a center punch activated with a clip. (N.T. 9/30/86 at 199–200). Finally, Trooper Krebs explained the impracticality of using a guard father as either a center punch or a metal scribe. (N.T. 9/30/86 at 200–201).

In addition to Trooper Krebs' testimony, the Commonwealth produced the advertisement shown to Captain Traenkle by appellant at the police station on the day of his arrest, which depicted an instrument identical to the one appellant possessed. It identified the object as a guard father, designed to be used as a discreet defensive weapon. (Commonwealth's Exhibit C–2).

Viewing the evidence in the light most favorable to the verdict winner, with all reasonable inferences arising therefrom, the evidence is sufficient to support a finding that a guard father is an instrument with no common lawful purpose which may be used to inflict serious bodily injury; therefore, the "other implement" clause provides an alternate basis for upholding the trial court's determination that the evidence was sufficient to sustain the verdict. A verdict based on sufficient, albeit conflicting evidence, is conclusive on appeal. It is not our role, as an appellate court, to pass upon the credibility of witnesses or to act as a trier of fact; we will not substitute our judgment for that of the fact finding jury. *Commonwealth v. Pearsall, supra; Commonwealth v. Reddix, supra; see also Standard Pipeline Coating Co., Inc. v. Solomon & Teslovich, Inc.,* 344 Pa.Super. 367, 496 A.2d 840 (1985).

## II.

Appellant's second claim is that Section 908 is unconstitutional for two reasons. Appellant argues that the statute is unconstitutional because it is impermissibly vague and because it impermissibly shifts the burden of proof regarding specific enumerated defenses to the defendant.

## A.

Appellant argues that the statute is impermissibly vague because the "no common lawful purpose" language

fails to inform those who are subject to it what conduct will render them liable for criminal sanctions. We disagree.

In determining whether a statute is impermissibly vague, the following principles are applicable:

Absent the assertion of an infringement of First Amendment freedoms, the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged.

\* \* \* \* \* \*

A criminal statute must give reasonable notice of the conduct which it proscribes to a person charged with violating its interdiction. Statutes which are so vague that they fail to provide such notice violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

\* \* \* \* \* \*

That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Commonwealth v. Walton*, 252 Pa.Super. 54, 57–58, 380 A.2d 1278, 1279 (1977) *citing Commonwealth v. Heinbaugh*, 467 Pa. 1, 5, 354 A.2d 244, 245–46 (1976). *See also Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed.2d 322 (1926); *Commonwealth v. McKeithan*, 350 Pa.Super. 160, 504 A.2d 294 (1986); *Commonwealth v. Wallace*, 368 Pa.Super. 255, 533 A.2d 1051 (1987). Thus, the question is not whether the wording of the statute leaves gray areas, but whether appellant's conduct falls within such an area.

In *Commonwealth v. Walton, supra,* this Court held that as applied to an antique sword cane, Section 908 was not unconstitutionally vague. 252 Pa.Superior Ct. at 59, 380 A.2d at 1280. The court reasoned that it took no guess work to conclude that a sword cane is an "instrument for infliction of serious bodily injury which serves no [common] lawful purpose." 252 Pa.Superior Ct. at 59, 380 A.2d at 1280. The same can be said of the guard father. The instrument was designed strictly for use as a discreet "defensive" weapon. Thus, like the sword cane there is no question that the guard father is an instrument for infliction of serious bodily injury which serves no common lawful purpose. Therefore, appellant's claim that he was unfairly surprised by the application of the statute is without merit.

### B.

Appellant also claims the statute is unconstitutional because it impermissibly shifts the burden of proof to the defendant by requiring him to prove enumerated defenses by the preponderance of the evidence. This particular claim has previously been rejected and therefore is without merit. *See Commonwealth v. McFarland,* 252 Pa.Super. 523, 382 A.2d 465 (1977) (en banc) (prohibited offensive weapons statute was not rendered unconstitutional because of provision which placed burden on defendant to prove by preponderance of evidence one of enumerated defenses contained therein, in view of fact that provision establishing defense to such charge did not create an element of the offense).

### III.

Appellant's third claim is that the submission to the jury of the issue of whether the object in question is a dagger, knife, razor or cutting instrument constituted prejudicial error. This argument is erroneously premised on the conclusion that as a matter of law, the object here was not a "knife, razor, or other cutting instrument," the blade of which is exposed automatically. However, as discussed in Section IA, *supra,* we concluded that a six-inch steel shaft

with a pointed end may properly be characterized as a cutting instrument as that term is used in the statute. Having made this finding, we believe that the issue was properly submitted to the jury and we find no prejudical error.

## IV.

■ Appellant's fourth and final argument is that it was error to admit into evidence a written advertisement relating to the guard father. Appellant claims that there were three problems relating to the admissibility of this evidence: (1) the officer could not identify the exhibit as the paper he received on the night of appellant's arrest; (2) it was inadmissible hearsay; and (3) the exhibit was not relevant to the issue of why appellant possessed the object or used it. We disagree with each of these claims.

We note initially the admissibility of evidence is a matter left to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused its discretion. *Commonwealth v. Osborn*, 364 Pa.Super. 505, 516, 528 A.2d 623, 629 (1987). The exhibit in question was a photostatic copy of an advertisement for the "guard father" shown to Captain Traenkle by appellant the day he was arrested. It depicted an object identical to the instrument seized from appellant. The object was identified in the advertisement insert as a "guard father" designed for use as a discreet defensive weapon which can be easily concealed. (Commonwealth's Exhibit C–2).

The record completely contradicts appellant's assertion that the officer could not identify the exhibit as the same advertisement appellant showed him at the police station. Captain Traenkle testified on two occasions that the exhibit was in fact a photostatic copy of the advertisement that appellant identified on the night of the arrest. (N.T. 9/29/86 at 66, 67).

Furthermore, we agree with the Commonwealth and the trial court that the advertisement was not inadmissible hearsay and that it was relevant to the issue of whether or

not the instrument had a common lawful purpose. The Commonwealth introduced the advertisement, which appellant had shown to Captain Traenkle the day of his arrest, for the purpose of proving that appellant purchased the weapon knowing that it was a discreet weapon, albeit one self-servingly characterized as "defensive." [6]

Secondly, the advertisement was introduced to support the Commonwealth's position that the instrument had no lawful purpose. The community's perception of the nature of the object, *i.e.* the common purpose of the object, is a material issue. One method of establishing the community's perception of the item, beyond consideration of the weapon itself or calling individual members of the community to testify, is to demonstrate how it is advertised to that community. It is reasonable to infer that a community's perception of the common purpose of an object may be inferred from the advertisements of the object.[7] The advertisement was thus not introduced to prove that the statements of the manufacturer were true (which could be characterized as hearsay), rather, the advertisements were properly introduced to prove the "state of mind" of the community (which is not hearsay). *Cf. Commonwealth v. Fisher, supra* (the defendant used an advertisement from a sporting good magazine to support his defense that a "Wyoming Knife" had a common lawful purpose as a hunting tool).

## CONCLUSION

Based on the foregoing, we find appellant's claims are all without merit. Accordingly, we affirm the judgment of sentence.

**6.** The statute, of course, makes no such distinction between offensive and defensive weapons. Offensive is used in the statute in the sense of "objectionable" rather than "attack" or "initiate." *See Commonwealth v. Adams, supra.*

**7.** Though an advertisement may properly be admitted as evidence tending to establish indirectly the common purpose of an object, we in no way suggest that such evidence is conclusive as to the object's common purpose. Indeed, one of the purposes of advertisement is to change the public perception of a product.