640

674 A.2d 1116

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James Walter DUXBURY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 10, 1996.

Filed April 12, 1996.

John Molnar, Wind Gap, for appellant.

Alan M. Rubenstein, District Attorney, Doylestown, for the Commonwealth, appellee.

Before KELLY, POPOVICH and MONTEMURO *, JJ.

POPOVICH, Judge:

The appellant, James Walter Duxbury, appeals the judgment of sentence[1] for violating 18 Pa.C.S.A. § 6302 (Sale of Weapons to Minors). We affirm.

The facts, viewed in a light most favorable to the verdict-winner and drawing all reasonable inferences therefrom, disclose that thirteen-year-old Andrew Pilotti purchased a "pen-knife"[2] from the appellant for four dollars at his display stand at a flea market in Solebury Township, Bucks County. Once the minor had shown the purchase to his mother, she phoned the police who questioned the child and learned that the "pen-knife" had been sold without requesting the age or identification of the purchaser.

The minor accompanied the police to the location of the sale, and the appellant was identified as the seller of the "pen-knife," which had been determined by the District Attorney to be a prohibitive offense weapon. The appellant was arrested and charged with violating 18 Pa.C.S.A. § 908 (Prohibited Offensive Weapon) and Section 6302. A jury, after the presentment of the evidence, found the appellant not guilty of Section 908, but guilty of Section 6302. Sentence was imposed and this appeal followed raising two issues for our review:

A. WHETHER THE JURY'S VERDICT FINDING APPELLANT GUILTY OF SELLING A WEAPON TO MI-

---

* Retired Justice assigned to the Superior Court.

1. The appellant was sentenced to twenty-three months of non-reporting probation.

2. "Pen-knife" is an item which, on its surface, appears to be a "pen" that may be used as a writing instrument. However, when the "pen" is pulled apart at its center, a three-inch blade extends from and is attached to the opposite end of where the "pen" is located.

NORS AND NOT GUILTY OF PROHIBITED OFFENSE WEAPONS WAS INCONSISTENT?

B. WHETHER THE TRIAL COURT ERRED IN DE-TERMINING THAT THE KNIFE CONCEALED AS A PEN WAS A DEADLY WEAPON UNDER 18 Pa.C.S.A. § 6302?

Reviewing the merits of the last issue first, we note that Section 6302 labels as a first degree misdemeanor the sale of any "deadly weapon" to a person under eighteen years of age.

■ There is no disputing the fact that the appellant sold the "pen-knife" to Andrew Pilotti, who was under the age of eighteen at the time of the sale. The only issue which remains is whether the "pen-knife" sold in the present case is to be considered a "deadly weapon," which is defined by the Crimes Codes as:

Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S.A. § 2301. Here, since the "pen knife" was not "used" by the minor to produce death or serious bodily injury, our inquiry is whether the "intended use" of the instrumentali-ty "is calculated or likely to produce death or serious bodily injury."

Obviously, without undue elaboration, that portion of the instrument that served as a "pen" had an "intended or calcu-lated use" of being a writing implement. Thus, if its "intend-ed or calculated use" were followed—writing, neither death nor serious bodily injury would follow to render it a deadly weapon.

On the other hand, that portion of the instrumentality that constituted a "knife" is not as easily dismissed as an innocuous item because juxtaposed with the "pen" section making-up the single unit concealing a three-inch blade under a sheath to

camouflage its dual purpose.[3]   As this Court has observed in concluding that *an instrument shaped like a pen*, which when the clip was pressed ejected a six-inch steel blade and locked it into place ("a guard father") *was an "offensive weapon"* under 18 Pa.C.S.A. § 908(a), notwithstanding its having a common lawful purpose such as a "center punch and as a metal scriber."   In doing so, we wrote:

"While some conceivable lawful use could be found for almost every object otherwise proscribed by Section 908, the statute does not prohibit only items with no *conceivable* lawful purpose, but, more broadly, items with no common lawful purpose." *Commonwealth v. Fisher, supra*, [485 Pa. 8] 400 A.2d [1284 at] 1288 [ (1979) ] (Emphasis in original). Furthermore, our Supreme Court, in *Commonwealth v. Fisher, supra*, held that on a charge of violating Section 908(c), a circumstance-of-the-possession test was inappropriate in determining whether the instrument served a common lawful purpose.   400 A.2d [at] 1288.   *See also Commonwealth v. Artis*, 275 Pa.Super. 127, 418 A.2d 644 (1980); *Commonwealth v. Ashford*, 263 Pa.Super. 100, 397 A.2d 420 (1979) (plurality).   The question therefore is not whether appellant has proffered a plausible lawful use for the object, or whether the circumstances of the possession negated an intent to use the instrument unlawfully, but whether the guard father has common lawful purpose within the community.

At trial, appellant testified on his own behalf.   He stated that he used this particular instrument in his capacity as a machinist.   He testified further that he used the implement as a center punch and as a metal scriber....

\*      \*      \*      \*      \*      \*

As its rebuttal witness, the Commonwealth called Trooper Leon E. Krebs, who had ... extensive experience with metal scribes and center punches.   \* \* \* Trooper Krebs further testified that he had never seen a spring loaded

---

**3.**   Albeit the "pen" has positive attributes and may be mightier than the sword, in this scenario the sale of the latter as part and parcel with the former is proscribed when sold to a minor.

scribe and he had never seen a scribe with as much play as the guard father had. Additionally, he testified that he had never seen a center punch with a six-inch shaft and he had never seen a center punch activated with a clip. Finally, Trooper Krebs explained the impracticality of using a guard father as either a center punch or a metal scribe.

*Commonwealth v. Hitchon*, 379 Pa.Super. 136, 549 A.2d 943, 947 (1988) (Citations omitted).

Here, as in *Hitchon*, although some legitimate purpose was proffered in using the knife-portion of the instrument, i.e., opening the mail, this is not dispositive of the case. On the contrary, the minor's mother (Nona Pilotti) testified that in her experience as a nurse in the "critical care emergency room," the "pen-knife" was "not ... something appropriate" for her son. She had seen the damage a knife may inflict. Also, this same witness described the knife as "definitely pointed more than any knife that ... [she] ha[s] in [her] home. * * * Very definitely this [wa]s a piercing tip. * * * [S]he would have no particular need for that type of knife." N.T. 35; *Hitchon*, supra (Testimony of police and defendant permissible in determining whether six-inch pen shaped knife, with automatic ejection, had common lawful purpose within community).

In addition, Solebury Township police officers Mark Chaiken and John Kinderdine testified that the knife in question had "about [a] three inch[ ]" blade, a "quite sharp" tip and a blade that was sharp on one side of the knife. Also, in their opinion, such a "pen-knife" "could be used in a manner ... which ... could produce death or serious bodily injury." N.T. 50 & 69.

Viewing the evidence in a light most favorable to the verdict-winner, with all reasonable inferences arising therefrom, the evidence is sufficient to support a finding that the "pen-knife" sold by the appellant to a minor here could be used to inflict serious bodily injury or death,[4] a question

---

**4.** This determination, of necessity, undermines the appellant's claim that the jury finding him not guilty of violating Section 908, but guilty

reserved properly for the jury's determination. See *State v. Cobb*, 22 Wash.App. 221, 589 P.2d 297 (1978) (Whether blade of less than three inches was deadly weapon was a question of fact and not of law); *State v. Cox*, 11 N.C.App. 377, 181 S.E.2d 205 (1971) (Whether blade three inches long constituted a deadly weapon per se was for the jury to decide); *Williams v. Commonwealth*, 304 Ky. 359, 200 S.W.2d 926 (1947); cf. *Montgomery v. Commonwealth*, 346 S.W.2d 479 (Ky.1961) ("Small knife" used in robbery was a deadly weapon). Accord *Mason v. Commonwealth*, 396 S.W.2d 797 (Ky.1965) (Pocket knife with three-inch blade a deadly weapon as a matter of law in prosecution for armed robbery); 100 A.L.R.2d 287 (Knife as Deadly or Dangerous Weapon). Therefore, we disagree with the claim of court error.

Judgment of sentence affirmed.

---

of Section 6302, constituted an inconsistent verdict that may not stand. We disagree.

Consistency in a jury's verdict is unnecessary provided, of course, there is sufficient evidence to support the conviction(s) the jury has returned. *Commonwealth v. Purcell*, 403 Pa.Super. 342, 589 A.2d 217 (1991). The record is sufficient to substantiate the verdict. For instance, under the prohibited offensive weapons statute the jury must decide whether the knife had a common lawful purpose. However, a violation of Section 6302 requires the jury to determine only whether a sale of weapons to a minor occurred and the item sold is a deadly weapon. At bar, the facts are that the appellant sold a three-inch-bladed knife (concealed in the form of a pen). There is no doubt that such an instrument is capable of producing death or serious bodily injury. The jury could reasonably draw this conclusion from the testimony of the prosecutions' witnesses.

The appellant's reliance upon *Commonwealth v. Blake*, 413 Pa.Super. 416, 605 A.2d 427 (1992) is misplaced. There, unlike at bar, no "description of the size and shape of the [pocket] knife or blade" was given to enable the court to determine whether it was a deadly weapon. This, in addition to the fact that the weapon was not wielded by the appellant but injured the victim while still in his pocket, prompted a vacation of the judgment of sentence and a remand for resentencing without the deadly weapon enhancement statute (42 Pa.C.S.A. § 9721) being used to determine sentence.

We find no similarity with *Blake* sufficient to justify a like result here. Accordingly, we affirm the judgment of sentence.