J-S60030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AVERY MICHAEL VALENTIN-BAIR | |
| Appellant | No. 1291 MDA 2018 |

Appeal from the Judgment of Sentence April 6, 2018
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0005349-2016

BEFORE: SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.                    **FILED JANUARY 21, 2020**

Appellant, Avery Michael Valentin-Bair, appeals from his judgment of sentence of 22½-50 years' imprisonment for third-degree murder and two counts of aggravated assault with a deadly weapon.[1]  We affirm.

On the early evening of September 25, 2016, Christhian Torres, the decedent, was riding his bike with friends on the 1100 block of Locust Street in Reading, Pennsylvania with a Halloween mask on his head.  Angered by Torres's behavior, Jeremey Martinez, Appellant's neighbor, popped the tire of Torres's bike.  Torres informed his parents about Martinez's act.  Torres's parents and approximately twenty other local residents gathered to confront

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502 and 2702, respectively.

Martinez. Appellant, who resided at 1145 Locust Street, was standing on Martinez's porch at 1147 Locust Street when the group arrived.

A loud and profane argument began, but the situation appeared to de-escalate when Martinez agreed to pay for the tire. Hostilities reignited, however, when Appellant's mother disputed Martinez's responsibility to pay for the tire. Appellant made graphic statements about Torres's mother, and a fight began in front of 1145 Locust Street. Appellant brandished a stainless steel knife with a 3½-inch blade and stabbed Torres once in the heart, opening a 4½-inch wound in his left chest, just below the nipple. The force generated was powerful enough to penetrate Torres's breastplate. Darah Kim, a friend of Torres who attempted to intervene after the stabbing, testified that the stabbing took place in a breezeway between 1145 and 1147 Locust Street. Jonathan Torres, the decedent's brother, also testified that the stabbing took place in front of the breezeway. Appellant then swung the knife at and injured Kim's left hand. A short time later, Torres collapsed and died. Fourteen stitches were necessary to close the wound to Kim's hand. After the brawl, Appellant cleaned off his bloody face and hand, fled the neighborhood where he lived, and did not turn himself in until almost three days later.

Reading Police evidence technician Wilfredo Ramirez testified at trial that blood spots were found on the street and sidewalk. The blood spots were photographed and admitted as CW #10 without objection. Additionally, the spots were designated on a to-scale diagram of the crime scene, listed as

- 2 -

Legend #11. The diagram was admitted without objection. Ramirez further testified that despite the many areas where they detected and swabbed blood, he and investigators decided to send only four swabs to the lab for processing: a trail of blood spots from Appellant's door (CW #37), sink (CW #38), wall behind the sink (CW #39), and the knife (CW #40). All were admitted without objection; all were a match for Appellant. None of the blood swabs from the street or breezeway were tested.

Ramirez admitted during cross-examination that a boxcutter was found near Torres's body, and that a trail of blood spots on Legend #11 led toward the body as well. Defense counsel later suggested during closing argument that this evidence demonstrated Torres was the aggressor.

Appellant testified that he acted in self-defense because he was being attacked from every side by the group that had gathered to confront Martinez. He claimed that he could not stop the beating or escape without using his knife. He further stated that he stabbed Torres in the corner of the steps at 1147 Locust Street, not in front of 1145 Locust Street.

The jury found Appellant guilty of the above offenses but acquitted him of first-degree murder and possession of an instrument of crime. On April 6, 2018, the trial court imposed sentence. Appellant filed timely post-sentence motions, which the court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises four issues in this appeal, which we re-order for the sake of convenience:

1. Did the trial court err[] in denying a new trial when the Commonwealth made a specific repeated argument during its closing regarding the finding of blood in locations more consistent with their position despite having never sent said samples for testing to the lab, laying the inference that the blood was that of the deceased victim or secondary victim where said location of the killing was a material issue in the case of self-defense and caused extreme prejudice to [Appellant] and created a reasonable probability that these statement[s] contributed to the conviction[?]

2. Did the court err[] in denying a new trial as the verdict of guilty at Count No. 2 of the information, [where the verdict] was contrary to the law, the evidence, the weight of the evidence, and the evidence [was] insufficient to sustain a verdict of guilty, in that it was not established by direct or circumstantial evidence, the requisite element of malice required for third degree murder, by failing to show a wanton and willful disregard of an unjustified and extremely high risk that [Appellant's] conduct would result in death or serious bodily to Christ[h]ian Torres, which not only shock the conscience but even when viewed in the light most favorable to the Commonwealth were insufficient to support the verdict[?]

3. Did the court err[] in denying a new trial as the verdict of guilt[y] at Count No. 4 for aggravated assault on Darah Kim, [where the verdict] shocks the conscience as the evidence [was] insufficient to sustain a verdict of guilty as the witness (victim) gave multiple statements to police and under oath at the preliminary hearing that his wound was incidental contact and that he didn't even notice the cut until afterward, contrary to his trial testimony explained only by "I was going through a phase" and the location of the cuts (on the sides) [contradicted the Commonwealth's position that they were defensive wounds on the palms] if they occurred as described at trial[?]

4. Did the trial court abuse its discretion in imposing sentence, each individually and in light of the consecutive nature of the sentencing scheme, as it is manifestly excessive so as to inflict to[o] severe a punishment on [Appellant] and was not warranted

- 4 -

under the circumstances of the within case or the factors enumerated in the Sentencing Code which did not militate in favor of total confinement of the length imposed in this case by failing to give proper consideration [to] any rehabilitative incentive on behalf of [Appellant] and the mitigating factors presented at sentencing and focusing only on the punitive needs of the Commonwealth to the exclusion of all others, including the fact that the victim was the initial aggressor[?]

Appellant's Brief at 5.

First, Appellant demands a new trial because the prosecutor remarked improperly during closing argument that the spots found in the breezeway between 1145 and 1147 Locust Street were blood. According to Appellant, the prosecutor could not claim these spots were blood because the police did not submit swabs from these spots to the laboratory for testing. Appellant claims that the prosecutor's comments prejudiced him by bolstering the Commonwealth's theory that the stabbing occurred in the breezeway and discrediting Appellant's position that he stabbed Torres in self-defense in the corner of the steps at 1147 Locust Street.

Appellant has waived this argument by failing to raise a contemporaneous objection to the prosecutor's statements during closing argument. *Commonwealth v. Arrington*, 86 A.3d 831, 854 (Pa. 2014) (defendant waived objection to Commonwealth's closing argument inviting jury to draw negative inference from defendant's failure to testify where defense counsel failed to make contemporaneous objection); *Commonwealth v. Jones*, 543 A.2d 548, 550 (Pa. Super. 1988) (defendant waived issue that prosecutor committed prosecutorial misconduct during

closing argument by referring to location of crime being within running distance of defendant's house where defendant failed to object at time statement was made).

Even assuming Appellant did not waive this argument, it fails on the merits. A prosecutor's arguments to the jury are generally not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict. *Commonwealth v. Scott*, 212 A.3d 1094, 1110 (Pa. Super. 2019). We must not view prosecutorial remarks in isolation but in the context in which they were made. *Id.* The prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury. *Id.* Furthermore, "[a] prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks." *Commonwealth v. Wholaver*, 177 A.3d 136, 175 (Pa. 2018). This is because when the defendant "opens the door" on a particular subject, he "cannot . . . complain because the prosecutor chose to further comment on what was behind that door." *Commonwealth v. Hawkins*, 701 A.2d 492, 503 (Pa. 1997). Thus, our Supreme Court held in *Hawkins* that the prosecutor's closing argument— suggesting that the defendant failed to prove that someone else committed

the crime—was permissible, because defense counsel's opening statement—asserting that the defense would prove that someone other than the defendant committed the crime—opened the door for the prosecutor's comments. *See also Commonwealth v. Miller*, 172 A.3d 632, 644-45 (Pa. Super. 2017) (prosecutor's argument that correctional officer witness "was completely honest and candid with you" was fair response to defense counsel's repeated attacks on officer's credibility in his opening and closing argument).

Presently, the prosecutor's comments were a fair response to defense counsel's thesis that spots on the street leading to where Torres collapsed were blood. Defense counsel initially raised this position while cross-examining police technician Ramirez:

> **Defense Counsel**: The box cutter that was found that you identified as CW #36, that was found behind a car right behind the body of Christhian Torres?
>
> **Officer Ramirez**: It was found in the front of the car, near the front passenger side of the vehicle, Item #9 on the diagram.
>
> **Defense Counsel**: And that would be following the path there on the diagram where it kind of goes like 3, 4, 5, 6, 7, 8? It follows the path from 1145 [Locust Street] up towards 1132 [Locust Street] . . . I'm just asking if you agree with me that the diagram that you're looking at that's up on the screen now, which is CW #6, that there seems to be a path that starts with, let's say #4, and heading up the street on Locust towards 1132, that box cutter, which is listed as #9 on the exhibit, is in front of the car where the victim is deceased next to it?
>
> **Officer Ramirez**: That's fair to say, yes.

N.T. at 489. During closing argument, defense counsel implied that the path on the diagram was a trail of blood spots, even though these spots had not

been forensically tested. Counsel further implied that the "blood path," along with the discovery of the box cutter near Torres's body, indicated that Torres was the aggressor and that Appellant acted in self-defense, by stating:

> [Y]ou can follow his **blood trail**, unfortunately, up the block to 1132 where [Torres] ultimately falls at Hannah Wilkinson's place, the same way you can follow the **path of blood** that [Appellant] is going to leave as he goes back into the house . . . Was [Torres] probably holding the box cutter? Maybe it was in his pocket . . . So it's a reasonable thing to believe that it might have been [Torres's] fight. Again, not a knife fight. Follow the **blood path**.

N.T. at 693-94 (emphasis added).

Following defense counsel's closing argument, the prosecutor responded during the Commonwealth's closing argument:

> Officer Ramirez testified about evidence collection, about coming to the block after the incident . . . they see there's **blood** on the sidewalk, that there's **blood** on the street. They're the ones that go in and do swabs to verify that it's [Appellant]'s DNA on the knife. This (indicating) is the to-scale diagram that the Reading Police evidence department made up from what they saw at the scene. You can see the legend on the side here. Evidence markers 1, 3, 4, 6, 7, 8, and 9—I'm sorry; and 10 all have indications of **blood**. Amber and Jeremy testified that they saw [Appellant] getting beat up in this area here (indicating). [Appellant] testified, that's where I was when I had to stab Christhian Torres. That's where I was when I was being savagely beaten by ten people and had to stab Christhian Torres. And you'll see where they marked **blood**. There's no **blood** in that corner (indicating) where [Appellant] claims, I was being punched, I was being kicked, people were ripping my hair out. His testimony was, my face was covered in **blood**. They marked no **blood** in that corner (indicating). They marked **blood** on the block here (indicating), right in front of the breezeway, right in the middle of the sidewalk, right where Darah Kim says [Appellant] stabbed Christhian Torres, not in the corner where he suffered this savage beating . . . .

He was in the middle of the sidewalk, not in the corner. There is no physical evidence that corroborates that version of events. There's no **blood** in that corner found by police. There's **blood** right where Darah says Christhian was stabbed.

N.T. at 720-21, 726 (emphasis added).

If we viewed the prosecutor's closing argument in isolation, we might have concluded that it lacked evidentiary support. The police tested only four blood spots, none of which came from the street or breezeway, yet the prosecutor argued that spots on the street and breezeway were blood. However, when we review the prosecutor's comments in context, as the law requires us to do, *Scott*, 212 A.3d at 1110, we readily conclude that they were proper. Defense counsel commented during closing argument that the spots on the street leading towards where Torres collapsed were a "blood trail" and "blood path." This opened the door for the prosecutor to respond that the "blood" in the street and breezeway belonged to Torres, and that there was no "blood" where Appellant claimed he stabbed Torres in self-defense. Although there was no forensic foundation for the prosecutor's statement that the spots in the street and breezeway were blood, it was a fair response to defense counsel's entreaty to "follow the blood path" to Torres's body, which itself lacked a forensic foundation. *Hawkins*, 701 A.2d at 503.

In his next two arguments, Appellant asserts that the evidence was insufficient to sustain his convictions for third-degree murder and aggravated assault against Kim with a deadly weapon, and that the trial court erred by

denying Appellant's post-sentence motion seeking a new trial on these charges.

At the outset, Appellant merely asserts in passing that the evidence was insufficient, Appellant's Brief at 23, but fails to develop this argument further. Accordingly, he has waived his challenge to the sufficiency of the evidence. *Commonwealth v. Miller*, 212 A.3d 1114, 1131 (Pa. Super. 2019) (waiver of issue results when appellant fails to properly develop issue or cite to legal authority to support his contention in his appellate brief).

Even if Appellant did not waive his sufficiency argument, it is devoid of substance. To sustain a conviction of third-degree murder, the Commonwealth must prove that Appellant killed another person with malice. *Commonwealth v. Knox*, --- A.3d ----, 2019 WL 4316128, *5 (Pa. Super. 2019). Malice constitutes "exhibiting an extreme indifference to human life." *Id.* A fact-finder may find malice not only in an intentional killing, "but also in an unintentional homicide where the perpetrator consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury." *Id.* A fact-finder may also infer malice "from the use of a deadly weapon upon a vital part of the victim's body." *Id.*; *accord Commonwealth v. Briggs*, 12 A.3d 291, 307 (Pa. 2011) (use of deadly weapon on victim's chest sufficient to prove malice).

In a murder prosecution, evidence of provocation or self-defense tends to negate the malice required to prove murder. *Commonwealth v.*

*Carbone*, 574 A.2d 584, 589 (Pa. 1990). To meet its burden of proof on the element of malice, the Commonwealth must exclude self-defense beyond a reasonable doubt. *Id.* On the other hand, a jury is not required to believe the testimony of the defendant who raises the claim. *Id.* Where there is evidence from which a jury can reasonably infer malice, the Commonwealth has met its burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *Id.* at 590.

Construed in the light most favorable to the Commonwealth, the evidence demonstrates the use of a deadly weapon on a vital part of the victim's body, thus supporting the inference of malice. Other evidence supports a finding of malice as well. Several witnesses testified that Appellant acted aggressively and with hostility toward the group that gathered in front of Martinez's residence, engaging in aggressive body language and trading threats and insults with members of the crowd. This behavior continued even as Martinez attempted to de-escalate the situation by promising to pay for the victim's tire. The Commonwealth's forensic pathologist testified that it took substantial force to cause the decedent's stab wound, given the firmness of his breastplate and the fact that the entry wound was almost a full inch longer than the length of the blade itself. Immediately after the stabbing, Appellant cleaned off his bloody face and hand, fled the neighborhood where he lived, and did not turn himself in until almost three days later. The knife used to kill Torres was found in Appellant's home under a dresser in a second-floor

bedroom. Based on Appellant's aggressive behavior immediately before the incident, the sheer force used to inflict the fatal blow, and the apparent attempt to hide evidence and evade capture, Appellant consciously disregarded an unjustified and extremely high risk that his actions might have caused serious bodily injury. Based on the evidence, the jury could reasonably have inferred from Appellant's actions that he acted with malice before, during and after the stabbing.

Moreover, construed in the light most favorable to the Commonwealth, the evidence defeats Appellant's claim of self-defense. Appellant claims he was attacked by a group of approximately ten people at the corner of the porch steps of 1147 Locust Street, and that he was beaten so badly that his face was covered in blood and that blood was pouring out of his eye. He claims that he justifiably stabbed Torres due to that attack, in an effort to avoid injury to himself. Despite this claim, the police detected no blood in the area where Appellant claimed blood was pouring from his face and where he claimed he stabbed someone in the heart with a 3½-inch knife.

Furthermore, the evidence was sufficient to prove aggravated assault against Kim with a deadly weapon. To prove this offense, the Commonwealth must prove that Appellant intentionally or knowingly caused bodily injury to another with a deadly weapon. 18 Pa C.S.A. §2702(a)(4). This requires proof of three basic elements: (1) bodily injury, (2) a knowing or intentional *mens rea*, and (3) a deadly weapon. A person acts knowingly with respect to serious

bodily injury when he is aware that it is practically certain that his conduct will cause such a result. 18 Pa.C.S.A. § 302(b)(2)(ii). Appellant's 3½-inch knife was a deadly weapon. *Commonwealth v. Duxbury*, 674 A.2d 1116, 1117 (Pa. Super. 1996) (pen-knife with three-inch blade was instrument whose intended use was calculated or likely to produce death or serious bodily injury, despite its possible legitimate use as a pen, and thus was a deadly weapon for purposes of statute prohibiting sale of deadly weapon to minor). Kim suffered bodily injury because Appellant violently slashed his knife around and cut through to the bone of Kim's thumb, requiring fourteen stitches to close the wound. Finally, the evidence demonstrates that Appellant had to know that swinging and slashing a knife at someone's hands would cause bodily injury, as there could not reasonably be any other result.

We next consider Appellant's challenge to the weight of the evidence, which he preserved for appeal through post-sentence motions. Appellate review of a weight claim is limited to reviewing the trial court's exercise of its discretion. *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000). We do not review *de novo* the underlying question of whether a verdict was against the weight of the evidence. *Id.* The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Mikitiuk*, 213 A.3d 290, 305 (Pa. Super. 2019). The trial judge may not grant a new trial on the basis of a weight claim because of a

mere conflict in the testimony or because the judge would have arrived at a different verdict. **Widmer**, 744 A.2d at 752. Rather, the trial court may grant a new trial on the basis of a weight claim only when the jury's verdict is "so contrary to the evidence as to shock one's sense of justice." **Knox**, 2019 WL 4316128, at *7.

Appellant argues that the jury failed to give adequate weight to several factors, including (1) evidence showing that Appellant was in fear for his life; (2) Kim's preliminary hearing testimony that was inconsistent with his trial testimony and the trial testimony of Jeremy Martinez and Amber Lott, and (3) Appellant did not intentionally cut Kim. As explained above, the Commonwealth presented considerable evidence that Appellant acted with malice toward Torres and intentionally cut Kim. Although certain witnesses gave accounts of the events that were more helpful to Appellant, a mere conflict in the testimony does not entitle Appellant to a new trial. Nor do any discrepancies between Kim's preliminary hearing and trial testimony warrant a new trial. The jury was free to believe all, part or none of the evidence, and it chose to believe the Commonwealth's version of the events on the charges of third-degree murder, aggravated assault and possession of an instrument of crime. Thus, we conclude that the trial court properly exercised its discretion in denying Appellant's challenge to the weight of the evidence.

Finally, Appellant claims that the trial court abused its discretion by imposing an excessive sentence. Challenges to the discretionary aspects of

sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006). Appellant has failed to include a Rule 2119(f) statement in his brief, and the Commonwealth has objected to this omission. "A failure to include the Rule 2119(f) statement does not automatically waive an appellant's argument; however, we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement." ***Commonwealth v. Roser***, 914 A.2d 447, 457 (Pa. Super. 2006). Accordingly, Appellant has waived this issue.

Even if Appellant preserved this issue, it does not entitle him to relief. Sentencing is a matter vested in the sound discretion of the sentencing judge, and we will not disturb a sentence on appeal absent a manifest abuse of discretion. ***Commonwealth v. Sexton***, --- A.3d ----, 2019 WL 5540999, at *9 (Pa. Super. 2019). In this context, an abuse of discretion is not shown merely by an error in judgment. ***Id.*** Rather, the appellant must establish, by

reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Id.* Where the sentencing judge had the benefit of a pre-sentence investigation report ("PSI"), it will be presumed that the judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *Commonwealth v. Clemat*, --- A.3d ----, 2019 WL 4180658, at *11 (Pa. Super. 2019).

In this case, the trial court had the benefit of a PSI outlining Appellant's fifteen-year history of criminality that resulted in a Prior Record Score ("PRS") of 5. This record includes burglary and weapons offenses as a juvenile and robbery, theft and drug offenses as an adult and make clear Appellant's inability and unwillingness to conform to society's laws. With regard to third-degree murder, based on the PRS of 5, the range of minimum sentences after application of the Deadly Weapon Enhancement ("DWE") placed Appellant's sentence between 210 months to the statutory limit of twenty years (240 months). The trial court sentenced Appellant to twenty to forty years' imprisonment. While this was the statutory maximum, it fell within the accepted range of sentences based on Appellant's prior criminal record and sentencing enhancements sought by the Commonwealth. With regard to Appellant's conviction for aggravated assault with a deadly weapon against Kim, based on his PRS, the minimum sentencing range fell between twenty-

seven to thirty-three months. The trial court sentenced Appellant to a consecutive term of thirty months to ten years' imprisonment, again within the accepted ranges of sentences. As such, these sentences are not excessive nor were they an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2020