J-A14044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRANDON D. FRICK, | |
| Appellant | No. 1424 MDA 2015 |

Appeal from the Judgment of Sentence March 12, 2015
in the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0000680-2014

BEFORE:  BOWES, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 19, 2016**

Appellant, Brandon D. Frick, appeals from the judgment of sentence imposed on March 12, 2015, following his jury conviction of simple assault and recklessly endangering another person (REAP).[1]  On appeal, Appellant challenges the denial of his post-sentence motion alleging prosecutorial misconduct, the discretionary aspects of his sentence, and the trial court's decision not to allow him to call all of his character witnesses.  For the reasons discussed below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2701(a)(1) and 2705, respectively.

We take the underlying facts and procedural history in this matter from our independent review of the certified record.

On April 12, 2014, Charles Garrett Adams (Adams) and his friend, Eli Diehl (Diehl), drove up to State College in anticipation of attending the Penn State University Blue and White game the following day. (*See* N.T. Trial, 1/07/15, at 106). The two initially intended to stay with a male friend at a location known as "The Retreat." (*Id.* at 106-07). At some point during the evening, the two went to visit Adams' friend, Chloe Strader (Strader), and spent some time drinking and partying with Strader and her friends. (*See id.* at 106, 110-13). A group of people, including Strader, Adams, and Diehl, left the residence, went out to local bars, and had a few drinks. (*See id.* at 113-14). When the bar closed, the group separated. (*See id.* at 114). Diehl testified that, at some point during the evening, Strader had invited him and Adams to stay at her apartment. (*See id.* at 115).

At the end of the evening, Adams and Diehl returned to Strader's apartment, either intending to stay there or obtain directions back to the Retreat. (*See id.* at 116, 208-09). When they arrived at the apartment, they knocked on the door and three hostile men,[2] opened the door. (*See id.* at 116-17, 210, 293, 296-97; N.T. Trial, 1/08/15, at 31). While these men had met Adams and Diehl earlier in the evening, they now denied this and

_____

[2] The men were Strader's roommates, Robert Donaldson (Donaldson) and William Stranburg (Stranburg), and Appellant, who was visiting that night.

said that Strader did not want them there, and then closed the door. (**See** N.T. Trial, 1/07/15, at 116, 210). Adams and Diehl went downstairs and Adams unsuccessfully attempted to contact Strader by phone. (**See id.** at 116, 211-12). Confused and uncertain where to go, Adams and Diehl went back up to the apartment and knocked on the door. (**See id.** at 118-19, 212-13). This time the three men answered the door with raised knives and immediately confronted Adams and Diehl. (**See id.** at 118-19, 213). Adams and Diehl attempted to leave but one of the men punched Diehl in the face and he fell down the stairs. (**See id.** at 120-23, 214-17, 220-23). Adams ran down the stairs to Diehl and, while he was running, Appellant stabbed him in the back and the three men pushed and kicked him down the stairs to the door. (**See id.**). Appellant then returned to the apartment, cleaned the blood off the knife, and hid it in a box of cereal. (**See** N.T. Trial, 1/08/15, at 145-48).

After Adams and Diehl escaped the residence, Adams asked Diehl to check his back because it was hurting. (**See id.** at 124). Diehl observed a bleeding stab wound and then called 911. (**See id.**).

Because of the assault, Diehl suffered a black eye and had cuts on his back, from either slashes or falling down the stairs. Diehl testified that he also had an injury to his foot. (**See** N.T. Trial 1/07/15, at 126). Adams suffered a stab wound and was taken to Mount Nittany Medical Center. (**See id.** at 159-60, 227). After a trauma evaluation, medical personnel

determined that Adams suffered a penetrating wound to the spine; he was transferred to Altoona because of concerns about possible serious injuries to his spine, lung, spleen, or kidney. (*See id.* at 163-64, 171). At Altoona, he received staples to repair the damage. (*See id.* at 227).

On May 7, 2104, the Commonwealth filed a criminal information charging Appellant two counts of aggravated assault, one count of terroristic threats, one count of possessing an instrument of crime (PIC),[3] as well as the aforementioned charges of simple assault and REAP. Immediately prior to the start of trial, the Commonwealth *nolle prossed* one of the aggravated assault charges.

A jury trial took place on January 7 and 8, 2015. On the second day of trial, Appellant sought to call co-defendant William Stranburg to testify on his behalf. (*See* N.T. Trial, 1/08/07, at 195-99). However, Stranburg asserted his Fifth Amendment right against self-incrimination and refused to testify. (*See id.*). Later that day, Appellant sought to call twenty-five character witnesses to testify on his behalf. (*See id.* at 263). Over Appellant's objection, the trial court allowed Appellant to call only seven character witnesses. (*See id.* at 264-92). Following testimony, as noted above, the jury found Appellant guilty of simple assault and REAP.

---

[3] 18 Pa.C.S.A. § 2702(a)(1) and (4); 2706(a)(1); and 907(a), respectively.

On March 6, 2015, the trial court sentenced Appellant to an aggregate term of incarceration of not less than eight nor more than twenty-three and one-half months.[4]  On March 13, 2015, Appellant filed a post-sentence motion.  He filed an amended post-sentence motion on July 2, 2015.  On August 12, 2015, the trial court held an evidentiary hearing on Appellant's post-sentence motions.  The hearing mainly concentrated on Appellant's claim that the Commonwealth committed prosecutorial misconduct by directing co-defendant Stranburg to assert his Fifth Amendment rights because his testimony was damaging to the Commonwealth.  (*See* Trial Court Opinion, 10/22/15, at 2).  The trial court summarized the testimony at the hearing thusly:

> Matthew McClenahen, Esquire, counsel for [Stranburg], testified that A[ssistant] D[istrict] A[ttorney (ADA) Nathan] Boob got in touch with him after the first day of the jury trial and advised that he "did not think he needed" [Stranburg] to testify because he "had enough" and it would "muddy the waters." Attorney McClenahen advised [ ] Stranburg to plead the Fifth Amendment because he did not want his client to testify in a manner that the Commonwealth would consider to be perjury. He noted that [ ] Stranburg's account differed from the other defendants . . . . Attorney McClenahen was of the opinion that ADA Boob and [State College] Detective [Christopher] Weaver [the primary detective on the case] did not accept [ ] Stranburg's account.  Attorney McClenahen testified there was no plea offer to his client until after [Appellant's] sentencing and there was no exchange of a plea offer for his client pleading the Fifth Amendment.  He noted that his client had the absolute right to plead the Fifth Amendment because his written statement implicated him.  Attorney McClenahen unequivocally testified

---

[4] The trial court filed an amended sentencing order on March 12, 2015.

that ADA Boob did not direct him to have his client plead the Fifth Amendment. Furthermore, ADA Boob unequivocally testified that he did not tell [ ] Stranburg to plead the Fifth Amendment or instruct Attorney McClenahen to tell [ ] Stranburg to plead the Fifth Amendment. Based on the testimony adduced at the hearing, [the trial c]ourt was convinced that Attorney McClenahen advised his client to plead the Fifth Amendment and was not directed by ADA Boob to do so.

(**Id.** at 2-3) (record citations omitted).

Following the hearing, the trial court denied Appellant's post-sentence motions in their entirety. The instant, timely appeal followed. On September 11, 2015, the trial court directed Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on September 22, 2015. **See id.** On October 22, 2015, the trial court issued an opinion. **See** Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

I. Whether the trial court erred in denying Appellant's post-sentence motion alleging prosecutorial misconduct after the attorney for the Commonwealth persuaded a co-defendant to assert his Fifth Amendment privilege for the improper purpose of depriving Appellant of favorable testimony at trial[?]

II. Whether the trial court erred in applying the deadly weapon sentencing enhancement[?]

III. Whether the trial court improperly limited defense counsel's presentation of character testimony[?]

(Appellant's Brief, at 9) (unnecessary capitalization and footnote omitted).[5]

In his first claim, Appellant argues that the trial court erred in denying his amended post-sentence motion claiming prosecutorial misconduct. (**See** Appellant's Brief, at 22). Specifically, Appellant claims the Commonwealth violated his "Fourteenth Amendment right to due process and Sixth Amendment right to compulsory process by substantially interfering with the choice of [Stranburg], a key defense witness, to testify at Appellant's trial because Stranburg's testimony would have undermined the Commonwealth's theory of the case." (**Id.**). Appellant contends that the misconduct was so egregious as to bar retrial on double jeopardy grounds. (**See id.** at 33-34).

Appellant also appears to claim that Stranburg did not properly assert his Fifth Amendment right because Stranburg's assertion of the right was illegitimate and the trial court failed to conduct the requisite inquiry into Stranburg's assertion of his Fifth Amendment right, which would have revealed its impropriety. (**See id.** at 28-32). We find that Appellant waived any claim that Stranburg's assertion of the right was illegitimate and waived

_____

[5] We note that Appellant's brief is fifty pages in length and does not contain the certification required by Pa.R.A.P. 2135. **See** Pa.R.A.P. 2135(a)(1) ("A principal brief shall not exceed 14,000 words, except as stated in subparagraphs (a)(2)-(4) [involving cross appeals and capital cases]. A party shall file a certificate of compliance with the word count limit if the principal brief is longer than [thirty] pages or the reply brief is longer than [fifteen] pages when prepared on a word processor or typewriter.") As we concluded that this single deviation from the rules applicable to briefs does not impede our review, we will overlook it. **Cf. Commonwealth v. Spuck**, 86 A.3d 870, 876 (Pa. Super. 2014), *appeal denied*, 99 A.3d 77 (Pa. 2014).

any claim regarding the trial court's lack of inquiry. In addition, we find Appellant's claim of prosecutorial misconduct lacks merit.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V. The United States Supreme Court has stated that we must liberally interpret this privilege. *See* **Hoffman v. U.S.**, 341 U.S. 479, 486 (1951). The Supreme Court held that:

> [t]he privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.

**Kastigar v. U.S.**, 406 U.S. 441, 444-45 (1972). Our Supreme Court has held that the guarantee against self-incrimination is absolute, stating:

> [h]e cannot be compelled to give evidence against himself. This does not refer to any particular place or at any particular time. He may not be compelled, under any circumstance, to testify against himself where criminal prosecution is involved. The constitutional privilege is not like a coat which may be taken off and thrown away. It is as much a part of the accused as his skin and may not be stripped away by himself or by others. It is an inviolable power accorded him in exchange for what he surrenders in being a member of the society of the Commonwealth. Of course, he may, if he so desires, testify against himself, but the constitutional privilege continues to remain with him, and the fact that he has willingly admitted circumstances adverse to his own interests can never be made the basis for compelling him to make further admissions. Even if an accused makes a hundred statements prior to trial he may still refuse to testify against himself at the trial. His constitutional privilege against self-incrimination is inalienable, inviolable and irrevocable.

*Commonwealth v. Fisher*, 157 A.2d 207, 210 (Pa. 1960) (quotation marks omitted). As the issue of whether Stranburg properly invoked his Fifth Amendment right against self-incrimination is a pure question of law, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Knoble**, 42 A.3d 976, 979 (Pa. 2012).

However, before we can reach the merits of Appellant's contention that Stranburg did not legitimately invoke his Fifth Amendment right and that the trial court failed to undertake a proper colloquy, we must determine if this claim is properly before us. The record reflects that, at trial, Appellant did not object to Stranburg's invocation of his right as illegitimate and did not object to the trial court's colloquy. (**See** N.T. Trial, 1/08/15, at 195-99). The only concern raised by Appellant was the manner in which he would be able to "use the fact that he pled the Fifth for the balance of the trial and closing." (**Id.** at 198). It is settled that failure to raise a contemporaneous objection constitutes a waiver of the claim. **See Commonwealth v. Powell**, 956 A.2d 406, 419 (Pa. 2008), *cert. denied*, 556 U.S. 1131 (2009).

Moreover, Appellant did not raise this claim in his amended post-sentence motion, which only raised the prosecutorial misconduct claim. (**See** [Appellant's] Amended Post-Sentence Motion, 7/02/15, at unnumbered pages 1-4). Thus, Appellant waived his claim for this reason as well. **See Commonwealth v. P.L.S.**, 894 A.2d 120, 132 (Pa. Super. 2006), *appeal denied*, 906 A.2d 542 (Pa. 2006) (holding appellant waived claim that his

Fifth Amendment rights were violated by use of Sexual Offender Assessment Board assessment when he failed to object either during hearing or raise claim in post-sentence motion). Thus, we find that Appellant waived any challenge to the legitimacy of Stranburg's invocation of his right against self-incrimination or to the adequacy of the trial court's colloquy.[6]

As noted above, Appellant claims that the Commonwealth committed misconduct by inducing Stranburg to assert his Fifth Amendment right against self-incrimination. (**See** Appellant's Brief, at 22). We disagree.

Our standard of review is well settled. Our review "for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the

---

[6] We note that Appellant also failed to raise the issue in his Rule 1925(b) statement. (**See** [Appellant's] Concise Statement of Errors Complained of on Appeal, 9/22/15, at unnumbered page 1). As amended in 2007, Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **see also Commonwealth v. Lord**, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in* **Commonwealth v. Burton**, 973 A.2d 428, 431 (Pa. Super. 2009). Moreover, an appellant cannot raise a new issue on appeal. **See** Pa.R.A.P. 302(a). Lastly, Appellant did not raise this claim in his statement of the questions involved. (**See** Appellant's Brief, at 9). The Rules of Appellate Procedure provide that issues to be resolved must be included in the statement of questions involved or "fairly suggested" by it. Pa.R.A.P. 2116(a). This issue is not included in the statement of questions involved, nor is it "fairly suggested" by it. Thus, we hold that Appellant has waived this claim for these reasons as well. **See** Pa.R.A.P. 1925(b)(4)(vii); **see also Commonwealth v. Harris**, 979 A.2d 387, 397 (Pa. Super. 2009) (holding claim waived when not included in statement of questions involved).

defendant was deprived of a fair trial, not a perfect one." ***Commonwealth v. Helsel***, 53 A.3d 906, 920 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1244 (Pa. 2013) (citation omitted).  Further, our Supreme Court has stated:

> We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

***Commonwealth v. Martorano***, 741 A.2d 1221, 1223 (Pa. 1999) (citation omitted).

Here, the record reflects that both the Commonwealth and the defense subpoenaed Stranburg.  (***See*** N.T. Trial, 1/08/15, at 196).  At the time of trial, while Stranburg was cooperating with the Commonwealth, he remained a co-defendant and did not have a "deal."  (N.T. Post-Sentence Motions Hearing, 8/12/15, at 37-39, 46, 53, 60-61).  At the evidentiary hearing, Stranburg's attorney, Matthew McClenahen testified unequivocally and repeatedly that it was his decision alone to have Stranburg invoke his Fifth Amendment rights.  (***See id.*** at 43-46, 64, 67-68, 76-77, 88-89, 97-100, 102-03).  Attorney McClenahen explained the events and his decision-making process as follows:

> Okay.  So [ADA] Boob called me after hours.  I think it was January 7th because I think it was a two-day trial and it was after the night of the first day and he said I don't think I need your guy, I think we have enough, and I think it would just muddy the waters to put him on at this point. . . . So I said what if [defense counsel] calls him.  I mean, is it going to be helpful or do you think it will hurt. . . .

* * *

> Well that — January 7th. I didn't want [Stranburg] to take the stand and testify in a manner which Detective Weaver and [ADA] Boob would consider to be perjury. I thought he would have testified truthfully from my opinion but my opinion doesn't really count when it comes to determining what type of plea offers are extended and there was a major discrepancy between [Stranburg's account and those of other witnesses]. . . . Detective Weaver and [ADA] Boob didn't believe Mr. Stranburg . . . . so if Mr. Stranburg would have testified in that manner it would have been inconsistent with the Commonwealth's witnesses and [ADA] Boob would have thought he was lying. . . . Well from my perspective I thought [ADA] Boob would perceive [Stranburg's testimony] as being dishonest testimony and the last thing you want to do if you are trying to get a plea agreement is have your client testify in a way that the prosecutor thinks is a lie.

(*Id.* at 43-46).

Attorney McClenahen stated that the Commonwealth did not offer his client a "deal" until after Appellant's sentencing and "there was no bargain for exchange that [Stranburg] would get a plea to a M3 DC in exchange for pleading the Fifth. That never happened. Never happened." (*Id.* at 60-61). Attorney McClenahen testified that he believed defense counsel misunderstood a conversation that occurred during a post-sentence hearing, stating:

> Okay. So you, and Adam Morris [attorney for Donaldson], and I were talking about logical issues like what witnesses still needed to testify and things like that and I indicated that [Stranburg] didn't get a chance to testify at trial because [ADA Boob] didn't want to call him because it would have undermined the Commonwealth's theory of the case . . . . So [ADA Boob] didn't call him and I indicated I had him plead the Fifth and apparently you took that to mean that [ADA] Boob directed me

- 12 -

to have him plead the Fifth when all I was saying was that [ADA Boob] didn't call him and I told him to plead the Fifth. That's why he didn't get a chance to testify. **There was no directive from [ADA] Boob to me telling him to plead the Fifth.** In fact, if I remember correctly when I said to [ADA Boob] that I am going to have him plead the Fifth he said something to the effect of well that's your call.

(*Id.* at 67-68) (emphasis added).

When Appellant's counsel again tried to elicit an admission that the Commonwealth induced Stranburg to plead the Fifth, Attorney McClenahen retorted:

> . . . I explained that that is not what happened and no matter how much you try to dance around or twist words that objective reality is not going to change.
>
> You cannot magically bring something into existence by playing with words that did not happen. The objective reality is [ADA] Boob did not direct me to have [Stranburg] plead the Fifth, and, secondly, we did not get a plea offer until March 19th. You have filed a motion in which you have alleged things that are objectively and factually not true and it was very reckless for you to file something like that without first having talked to me.

(*Id.* at 76-77).

During the Commonwealth's cross-examination of Attorney McClenahen, he again clearly stated that there was no truth to Appellant's assertion that ADA Boob directed his client to take the Fifth or conditioned a plea deal on his client taking the Fifth. (*See id.* at 88-94).

Attorney McClenahen summarized his reasoning for having Stranburg assert his Fifth Amendment right against self-incrimination as follows:

I see no other option I had other than to have my client plead the Fifth. Number one, he had a right to plead the Fifth contrary to [Appellant's counsel's] misinterpretation of the law because he was charged with a crime and had he told the truth, the whole truth, and nothing but the truth he would have been admitting criminal offenses, and, number two, he exposed himself to the possibility of the Commonwealth perceiving him as committing perjury, which is just as bad as committing perjury for all practical purposes.

(*Id.* at 105-06).

Further, at the hearing, Detective Christopher Weaver, the primary detective on the case, testified that he advised ADA Boob not to call Stranburg as a witness because he did not believe Stranburg was "truthful and honest[.]" (*Id.* at 167, *see id.* at 167-68). ADA Boob's testimony was consistent with Attorney McClenahen's. He testified that he chose not to put Stranburg on the stand because he believed it would be tantamount to suborning perjury. (*See id.* at 188-90). He confirmed that he did not offer a plea deal to Stranburg until after Appellant's trial, and that his decision to offer that deal was not based on Stranburg's invocation of his Fifth Amendment right, but upon the relative weakness of the evidence against him. (*See id.* at 193-94, 211, 220-21). Moreover, ADA Boob observed that had Stranburg not invoked his Fifth Amendment right, he would have "relished" the opportunity to cross-examine him because he believed it would have strengthened his case against him and given him the opportunity to file additional charges against Stranburg. (*Id.* at 201; *see id.* at 200-03, 207, 216). ADA Boob also clearly said that he did not instruct Attorney

McClenahen to have his client invoke his Fifth Amendment rights. (*See id.* at 221-23, 228).

Thus, in sum, the evidence adduced at the post-sentence motions hearing showed that Stranburg had cooperated with the Commonwealth by making a statement to the police. However, neither Detective Weaver nor ADA Boob felt the statement was truthful. Thus, the Commonwealth did not call Stranburg as a witness. The Commonwealth and Stranburg had not reached a plea agreement at the time of Appellant's trial. Therefore, when informed that the Commonwealth would not call his client, Attorney McClenahen instructed him to invoke his Fifth Amendment privilege against self-incrimination if called by the defense. Attorney McClenahen did so because Appellant's statement to the police contained admissions to criminal activity and because he was aware that the Commonwealth did not believe his client and was concerned about both possible perjury charges and the possibility of being unable to obtain a plea agreement in the future. There is simply no evidence of record to substantiate Appellant's contention that the Commonwealth induced or interfered in any way with Stranburg's decision to invoke his Fifth Amendment rights. Thus, the trial court did not abuse its discretion in denying Appellant's amended post-sentence motion claiming prosecutorial misconduct. *See Helsel*, *supra* at 920.

In his second claim, Appellant argues that the trial court erred in applying the deadly weapon sentencing enhancement. Specifically, he

argues that a pocketknife is a not a deadly weapon. (*See* Appellant's Brief, at 36). In the alternative, Appellant argues that, even if the trial court properly applied the deadly weapon enhancement, the trial court erred in applying the DWE/Used matrix rather than the DWE/Possessed matrix. (*See id.* at 43-45). We disagree with Appellant's first contention, and find his second contention waived.

Preliminarily, we note, "[i]ssues challenging the discretionary aspects of sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." ***Commonwealth v. McAfee***, 849 A.2d 270, 275 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004) (citations and internal quotations marks omitted). Here, Appellant properly preserved his claim that the trial court erred in applying the deadly weapon enhancement by filing a post-sentence motion. (*See* [Appellant's] Post-Sentence Motion, 3/13/15, at unnumbered pages 2-3).

The right to appeal the discretionary aspects of a sentence is not absolute. ***See McAfee***, ***supra*** at 274. When an appellant challenges the discretionary aspects of the sentence imposed, he must present "a substantial question as to the appropriateness of the sentence[.]" ***Commonwealth v. Anderson***, 830 A.2d 1013, 1017 (Pa. Super. 2003) (citations omitted). An appellant must, pursuant to Pennsylvania Rule of

Appellate Procedure 2119(f), articulate "a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1263 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted). If an appellant's Rule 2119(f) statement meets these prerequisites, we determine whether a substantial question exists. *See Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* (emphases in original).

Here, Appellant has included a Rule 2119(f) statement in his brief, (*see* Appellant's Brief, at 35-36), arguing that the trial court improperly applied the deadly weapon enhancement. (*See id.* at 35). This Court has held that a claim that a trial court wrongfully applied the deadly weapon enhancement[7] raises a substantial question. *See Commonwealth v.*

---

[7] The deadly weapon enhancement is codified at 204 Pa. Code Section 303.10, and provides in pertinent part:

**(a) Deadly Weapon Enhancement.**

(1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction

*(Footnote Continued Next Page)*

**Buterbaugh**, 91 A.3d 1247, 1266 (Pa. Super. 2104), *appeal denied*, 104 A.3d 1 (Pa. 2014). Therefore, we will discuss the merits of this contention.

18 Pa.C.S.A. § 2301 defines a "deadly weapon" as:

*(Footnote Continued)* —————————

offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii) Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the offender intended to use the weapon to threaten or injure another individual.

(2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code Section 303.10(a)(1)-(2).

Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S.A. § 2301. In arguing that the knife used in the instant matter did not constitute a deadly weapon, Appellant relies on this Court's decision in **Commonwealth v. Blake**, 605 A.2d 427 (Pa. Super. 1992). (**See** Appellant's Brief, at 36-42). We find this reliance misplaced.

In **Blake**, the appellant used a knife to gain entry to the victims' home; the appellant punched one victim in the eye, and, during a struggle, the other victim was stabbed in the thigh by the knife that was in the appellant's pocket. **See Blake**, **supra** at 428. There was no evidence of record that the appellant wielded the knife in any manner and no description of the knife. **See id.** In determining that the trial court erred in applying the deadly weapon enhancement, this Court found that, because the knife had not been described, there was no evidence of record to support a claim that it had been designed as a weapon. **See id.** Further, we found that, based upon the fact that the knife was in the appellant's pocket during the stabbing, appellant did not use it in a manner that could cause death or serious bodily injury. **See id.** at 428-29.

In the instant matter, this is simply not the case, viewing the evidence as we must in the light most favorable to the verdict winner,[8] *see Commonwealth v. Duxbury*, 674 A.2d 1116, 1118-19 (Pa. Super. 1996), the record demonstrates that Appellant wielded the knife in such a manner as to potentially cause death or serious bodily injury. Here, the record reflects that, when Appellant heard Stranburg arguing with the victims, he removed his knife from his pocket and opened it. (*See* N.T. Trial, 1/08/15, at 214, 238-39). When Stranburg opened the door, he, Donaldson, and Appellant all brandished knives at the victims. (*See* N.T. Trial, 1/07/15, at 118-19, 213). The men, with brandished knives, chased the fleeing victims down the stairs, and, during that chase, Appellant stabbed Adams in the back. (*See id.* at 120-23, 214-17, 220-23). Adams suffered a penetrating stab wound to his back and there were concerns about more serious consequences because of the location of the injury in close proximity to his spine and other vital organs. (*See id.* at 159-64, 171, 227). This evidence is more than sufficient to support a finding that Appellant used the knife in a manner that could cause death or serious bodily injury, therefore, Appellant's claim lacks merit. *See Commonwealth v. Chapman*, 528 A.2d 990, 992 (Pa. Super. 1987), *appeal denied*, 536 A.2d 1328 (Pa. 1987)

---

[8] Throughout the argument on this issue, Appellant continually views the evidence in the light most favorable to himself. (*See* Appellant's Brief, at 38, 41-43).

(finding razor blade held to victim's face during robbery had sufficient potential to cause harm to justify application of deadly weapon enhancement).

Appellant also contends that the trial court erred in applying the DWE/Used matrix rather than the DWE/Possessed matrix. (*See* Appellant's Brief, at 43-45). However, Appellant waived this claim. Appellant did not raise this claim in his post-sentence motion, where he only raised the claim that the trial court erred in applying the deadly weapon enhancement. (*See* [Appellant's] Post-Sentence Motions, 3/13/15, at unnumbered pages 2-3). It is settled that an appellant waives any discretionary aspects of sentence issue not raised in a post-sentence motion; further, an appellant cannot raise an issue for the first time on appeal. *See Commonwealth v. Mann*, 820 A.2d 788, 793-94 (Pa. Super. 2003), *appeal denied*, 831 A.2d 599 (Pa. 2003) (finding claim sentencing court did not put sufficient reasons to justify sentence on record waived where issue was not raised in post-sentence motion); *see also* Pa.R.A.P. 302(a).[9] Thus, Appellant waived this discretionary aspect of sentence claim.

_____

[9] Again, we note that Appellant also waived this claim because he failed to raise it in his Rule 1925(b) statement. (*See* [Appellant's] Concise Statement of Errors Complained of on Appeal, 9/22/15, at unnumbered page 1); *see also* Pa.R.A.P. 1925(b)(4)(vii).

In his third and final claim, Appellant avers that the trial court abused its discretion by "only permitting defense counsel to call six[10] character witnesses."[11] (Appellant's Brief, at 46). Specifically, Appellant claims that the "nature and complexity of the case justified permitting Appellant to present a substantial number of character witnesses[.]" (*Id.*). Appellant claims that the exclusion of their testimony "restrict[ed] his ability to present a full defense." (*Id.*). We disagree.

In Pennsylvania, it is settled that

> [e]vidence of good character is always admissible for the defendant in a criminal case. It is to be weighed and considered in connection with all the other evidence in the cause. It may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal.

*Commonwealth v. Sandusky*, 77 A.3d 663, 673 (Pa. Super. 2013) (citation, quotation marks, and emphasis omitted). However,

> [t]he admissibility of evidence is a matter solely within the discretion of the trial court. Subject to the requirements of due process of law and of the constitutional rights of the parties, the court may make and enforce rules and orders covering any of

---

[10] The record reflects that Appellant called seven character witnesses. (*See* N.T. Trial, 1/08/15, at 264-92). However, the trial court, with the agreement of the parties, struck the character testimony of witness Donna Lopp as impermissible. (*See id.* at 287).

[11] It is not entirely clear how many character witnesses Appellant wished to call. At trial, Appellant initially sought to call twenty-five character witnesses. (*See* N.T. Trial, 1/08/15, at 263). Later, he stated that he wished to call nine additional character witnesses. (*See id.* at 288-89). In his brief, Appellant does not specify how many additional witnesses he wished to call.

the following matters, *inter alia*: (1) limiting the number of witnesses whose testimony is similar or cumulative. As with any other evidentiary ruling, we will reverse the trial court's determination to exclude testimony only if there has been an abuse of discretion.

***Commonwealth v. Walsh***, 36 A.3d 613, 621 (Pa. Super. 2012) (citations and internal quotation marks omitted). Further, the Pennsylvania Rules of Evidence provide: "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following . . . needlessly presenting cumulative evidence." Pa.R.E. 403. We have defined cumulative evidence as: "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." ***Commonwealth v. G.D.M., Sr.***, 926 A.2d 984, 989 (Pa. Super. 2007), *appeal denied*, 944 A.2d 756 (Pa. 2008) (citation omitted).

Here, Appellant called six witnesses who testified as to his reputation for being peaceful and nonviolent. (***See*** N.T. Trial, 1/08/15, at 265-92). It was Appellant's choice as to which character witnesses he chose. Appellant has not pointed to anything in the testimony of the remaining character witnesses that would have differentiated their testimony from the first six. (***See*** Appellant's Brief, at 46-49). Further, while claiming prejudice, (***see id.***), Appellant has not demonstrated any. Rather, we note that the jury acquitted Appellant of both aggravated assault and PIC. We have thoroughly reviewed the record in this matter, there is nothing in this case that was so inherently complex that it required calling more than six

character witnesses nor did the limitation in the number of witnesses impair Appellant's ability to present his defense that he accidentally stabbed Adams. Accordingly, we find that Appellant has not shown that the trial court abused its discretion by only allowing him to present six character witnesses. *See Walsh*, *supra* at 621.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins the Memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2016